FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 10, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| VICTOR I., [1] <br><br>                 Plaintiff, <br><br>   v. <br><br> KILOLO KIJAKAZI, <br> COMMISSIONER OF SOCIAL <br> SECURITY, <br><br>                 Defendant. | NO: 2:20-CV-0296-LRS <br><br><br> ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 11, 13. This matter was submitted for consideration without oral argument. Plaintiff is represented by attorney D. James Tree. Defendant is represented by Special Assistant United States Attorney Katherine B. Watson. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, Plaintiff's Motion, ECF No. 11, is denied and Defendant's Motion, ECF No. 13, is granted.

---

[1] Plaintiff's last initial is used to protect his privacy.

ORDER - 1

**JURISDICTION**

Plaintiff Victor I. (Plaintiff), filed for supplemental security income (SSI) on September 6, 2018, and alleged an onset date of September 1, 2018. Tr. 181-89. Benefits were denied initially, Tr. 86-94, and upon reconsideration, Tr. 96-102. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on July 1, 2020. Tr. 36-51. On July 29, 2020, the ALJ issued an unfavorable decision, Tr. 12-33, and on January 12, 2021, the Appeals Council denied review. Tr. 1-6. The matter is now before this Court pursuant to 42 U.S.C. § 1383(c)(3).

**BACKGROUND**

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are therefore only summarized here.

Plaintiff was born in 1968 and was 52 years old at the time of the hearing. Tr. 181. He dropped out of school in the ninth grade but later obtained a GED. Tr. 296. He has some limited work experience as an orchard worker, farm worker, cashier, and stocker. Tr. 45, 249-62. Plaintiff testified that his disability is caused by daily panic attacks and anxiety. Tr. 42. He testified he spends a lot of time in his room with the door shut. Tr. 43. Medication makes his symptoms more manageable, but he still has panic attacks. Tr. 43-44. He also has trouble with depression, paranoia, sleep disruption, energy, and suicidal thoughts. Tr. 222.

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

ORDER - 3

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy

ORDER - 4

this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner should conclude whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national

ORDER - 5

economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff did not engage in substantial gainful activity since September 6, 2018, the application date. Tr. 17. At step two, the ALJ found that Plaintiff has the following medically determinable impairments: depression, anxiety, and personality disorder. Tr. 17. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 19.

ORDER - 6

The ALJ then found that Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> He is limited to simple, routine work related instructions tasks and decisions with few workplace[] changes. He is limited to incidental contact with the public and coworkers. He is likely to be off-task and not productive up to 10% of the workday.

Tr. 22.

At step four, the ALJ found that Plaintiff has no past relevant work. Tr. 28. At step five, after considering the testimony of a vocational expert and Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found there are jobs that exist in significant numbers in the national economy that Plaintiff can perform such as cleaner II, landscape specialist, and industrial cleaner. Tr. 28-29. Thus, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since September 6, 2018, the date the application was filed. Tr. 29.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying supplemental security income under Title XVI of the Social Security Act. ECF No. 12. Plaintiff raises the following issues for review:

1. Whether the ALJ properly considered Plaintiff's symptom testimony; and

2. Whether the ALJ properly considered the medical opinion evidence.

ORDER - 7

ECF No. 12 at 2.

## DISCUSSION

### A.    Symptom Testimony

Plaintiff contends the ALJ erred by rejecting his symptom testimony.  ECF No. 12 at 11-18.  An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).  "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit

ORDER - 8

the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). In assessing a claimant's symptom complaints, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

First, the ALJ found that Plaintiff's mental health complains are out of proportion to his presentation during appointments. Tr. 33. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857. Minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor. *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

The ALJ observed mental status exam findings typically indicate cooperative or pleasant behavior (Tr. 299, 326, 332, 334, 335, 398, 443, 501-02, 504, 511, 602,

ORDER - 9

610-11, 614, 736, 749, 781, 811, 827, 839, 864, 868, 870, 872, 884-85, 934, 968, 970, 1049, 1051, 1053, 1066, 1081); that despite some signs of depression or anxiety, he generally presents with normal, appropriate, or stable mood or affect (Tr. 402, 429, 440, 498, 511, 540, 698, 747, 751, 755, 760, 764, 766, 779, 783, 791, 940, 988, 997, 1004, 1020, 1028, 1036, 1100, 1109, 1116, 1125), and in no distress (Tr. 429, 443, 511, 543, 655, 657, 660, 665, 668, 674, 694, 702, 906).   Tr. 23.   Plaintiff notes that the citations to records indicating no distress involve examinations for physical ailments, which, except for one instance,[2] do not reflect on Plaintiff's mental condition.   ECF No. 12 at 12.   Nevertheless, even if Plaintiff is correct and all but one of the "no distress" citations indicate little about Plaintiff's mental condition, the ALJ's other citations support the primary point that mental status examinations generally reflect relatively benign presentation out of proportion to a disabling mental condition.

The ALJ also observed that cognitively, Plaintiff often presents with full alertness and orientation (Tr. 300, 335, 394, 406-07, 410, 492, 501-02, 504, 511, 543, 558, 610, 614, 660, 665, 668, 675, 736, 747, 751, 755, 760, 764, 766, 779, 783, 785, 791, 858, 988, 997, 1004, 1020, 1028, 1036, 1100, 1109, 1116, 1125,1130);

---

[2] Plaintiff acknowledges that during an exam for a red eye, the ophthalmologist assessed Plaintiff's mood and affect and noted no acute distress.   Tr. 1130; ECF No. 12 at 19.

normal speech and logical, rational, organized, or goal-oriented thought process (Tr. 299, 410, 414, 505, 614, 618, 747, 751, 755, 760, 764, 766, 779, 783, 791); intact or normal memory (Tr. 451, 532, 540, 617, 629, 774, 798, 833, 858, 878, 896, 916, 925, 941, 988, 996, 1004, 1020, 1028, 1036, 1043, 1060, 1100, 1109, 1116, 1125); and intact attention span or concentration (Tr. 450, 617, 773, 797, 832, 857, 877, 895, 915, 926, 940, 1042, 1059).  The ALJ found these unremarkable mental status findings do not corroborate Plaintiff's description of severe social and cognitive mental dysfunction.  Tr. 23.

The ALJ found Plaintiff's mental complaints are inconsistent with essentially normal performance on formal mental status testing.  Tr. 24.  In July 2018, Dr. Bowes recorded mental status exam results which showed, as noted by the ALJ, normal memory, normal concentration, normal fund of knowledge, normal abstract thought, and normal insight and judgment.  Tr. 24, 299-300.  The ALJ observed that Plaintiff reported ideas of reference, paranoia, and auditory and visual hallucinations as the only abnormal finding.  Tr. 24, 300.  Plaintiff points out that the mental status exam results contain other abnormal findings of withdrawn presentation, dysphoric mood, and blunted affect which were not noted by the ALJ.  ECF No. 12 at 13-14.  To the extent the ALJ overlooked those findings, the ALJ erred.  However, the ALJ's overall point is supported by the exam results since Plaintiff alleged (among other symptoms) difficulties with memory, concentration, understanding, and confusion which are reasonably found to be inconsistent with the mental status exam

results indicating normal memory, concentration, knowledge, abstract thought,

insight, and judgment.  Tr. 299-300.

Second, the ALJ found Plaintiff's complaints of psychotic symptoms are not

fully reliable based on inconsistent reporting.  Tr. 23.  The ALJ evaluates a

claimant's statements for their consistency, both internally and with other

information in the case record.  Social Security Ruling 16-3p, 2017 WL 5180304,

at *5 (effective October 25, 2017).  The ALJ noted Plaintiff alleged psychosis

including auditory and visual hallucinations, though no provider ever observed him

responding to internal stimuli.  Tr. 23 (citing *e.g.*, Tr. 414, 618).  The ALJ also

observed that during a July 27, 2018, DSHS assessment by Tasmyn Bowes, Ph.D.,

Plaintiff reported that he had been experiencing visual or auditory hallucinations

and ideas of reference during the past few years.  Tr. 23, 296.  However, three days

prior, on July 24, 2018, Plaintiff reported no visual hallucinations, auditory

hallucinations, or ideas of reference to a treating provider.  Tr. 23-24, 498.  He

similarly denied signs of psychosis in May 2018.  Tr. 24, 504.  This inconsistency

was reasonably considered by the ALJ in evaluating Plaintiff's symptom claims.

Plaintiff argues these inconsistencies were "manufactured" by the ALJ and

offers other explanations of the evidence.  ECF No. 14 at 10.  Plaintiff cites records

from December 2018 and February 2019 indicating frequent hallucinations "even

during session," ECF No. 14 at 10, but it is not clear whether this note is an

observation by the provider, which is not otherwise described, or a statement of

Plaintiff's self-report.  Tr. 798, 833.  Nevertheless, the Court must uphold the

1    ALJ's decision where the evidence is susceptible to more than one rational

2    interpretation. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). On these

3    facts, the ALJ's interpretation of the evidence is reasonable. Even if the

4    hallucination evidence should have been interpreted differently, the ALJ cited

5    other inconsistencies supported by substantial evidence.

6         The ALJ found Plaintiff's complaints regarding an inability to deal with

7    people are inconsistent with his participation in group therapy. Tr. 24. The ALJ

8    observed that during group therapy, Plaintiff shared his experiences, offered

9    feedback, and interacted appropriately with the moderator and group members. Tr.

10   24 (citing *e.g.*, Tr. 747, 752-53, 755, 760, 764, 788, 816). Plaintiff points to other

11   notes in the record describing feeling of anxiety involving relationships with others

12   or going out in public. ECF No. 12 at 14 (citing Tr. 744, 805-06, 829, 854, 874,

13   892, 1039, 1056). Again, the ALJ's point is that Plaintiff's allegations of an

14   inability to deal with people are not as severe as alleged, as demonstrated by

15   observations of his behavior in group therapy. The ALJ did not find that Plaintiff

16   experiences no anxiety or social limitations; indeed, the ALJ found some social

17   limitations are supported by the record and the RFC finding limits Plaintiff to only

18   incidental contact with the public and coworkers. Tr. 22. Furthermore, to the extent

19   the evidence conflicts, it is the ALJ's duty to resolve the ambiguity. *See Morgan v.*

20   *Commissioner*, 169 F.3d 595, 599-600 (9th Cir. 1999). Here, the ALJ's

21   consideration of the evidence was reasonable.

Third, the ALJ found that Plaintiff's own statements indicate his mental symptoms are not as severe as alleged. Tr. 24. "Symptoms may wax and wane during the progression of a mental disorder. Those symptoms, however, may also subside during treatment. . . . Such evidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) (citing *Garrison*, 759 F.3d at 1017). The ALJ observed that in May 2018, Plaintiff said the medications were helpful and he was asymptomatic for depression with no suicidal ideation, psychosis, or anhedonia. He had normal appetite, energy level and concentration. Tr. 24, 408. In July 2018, he was doing much better with euthymic mood, good sleep, good appetite, good energy level, and no suicidal ideation. Tr. 402. In May 2019, he denied side effects from medication, his depression was better, and sleep was good with fewer dreams or nightmares. He was "doing a lot better." Tr. 891-92. Between January 2020 and March 2020, he regularly endorsed only mild depression. Tr. 1095, 1103, 1119-20. In March 2020, he was "doing okay" and "[d]oing pretty good," with improved overall sleep without nightmares. While he had moments of depression, anxiety, irritability, or hypervigilance when around many people, and he occasionally experienced thoughts of people following him every once in a while, he no longer had thoughts of harming himself or others. Tr. 1071. The ALJ found these statements indicate that Plaintiff's symptoms are not as severe as alleged.

Plaintiff counters that he "just as frequently reported worsening symptoms" and that it was improper for the ALJ to cite "'a few isolated instances of

ORDER - 14

improvement.'" ECF No. 12 at 16 (quoting *Garrison*, 759 F.3d at 1017). However, we will not reverse credibility determinations of an ALJ based on contradictory or ambiguous evidence. *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (citing *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)). The existence of a legally supportable alternative resolution does not provide a sufficient basis for reversing an ALJ's decision that is supported by substantial evidence. *Sprague v. Bowen*, 812 F.2d 1226, 1229 (9th Cir. 1987). Here, the ALJ cited evidence across the record supporting the conclusion that Plaintiff's statements about treatment and symptoms indicate that his symptoms are not as severe as alleged. Even if this reason is not sufficiently supported, the ALJ cited other clear and convincing reason supported by substantial evidence for the weight given to Plaintiff's symptom claims. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008); *see also Molina*, 674 F.3d at 1115 ("[S]everal of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record."); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (holding that any error the ALJ committed in asserting one impermissible reason for claimant's lack of credibility did not negate the validity of the ALJ's ultimate conclusion that the claimant's testimony was not credible).

Fourth, the ALJ found that Plaintiff's work history is poor, suggesting that his lack of employment is not related to his current medical condition. Tr. 25. The claimant's work record is an appropriate consideration in weighing the claimant's

ORDER - 15

symptom complaints.  20 C.F.R. § 404.1529; *Marsh v. Colvin*, 792 F.3d 1170, 1174

n.2 (9th Cir. 2015); *Thomas*, 278 F.3d at 958-59.  The ALJ observed Plaintiff's work

history reports and earnings record show a poor work history and that he has never

worked at a level constituting substantial gainful activity.  Tr. 24, 197-203, 205-09.

The ALJ noted that Plaintiff's history of incarceration and felony convictions are

possible non-disability reasons for not working.[3]  Tr. 25, 295, 346.  The ALJ

reasonably concluded the longstanding lack of employment is caused by factors

other than his current medical conditions.  Tr. 25.

Plaintiff acknowledges a spotty work history but alleges his poor work

history, substance abuse, and lack of employment are all related to his long-

standing mental health issues.  ECF No. 12 at 17 (citing Tr. 772).  The ALJ is

responsible for reviewing the evidence and resolving conflicts or ambiguities in

testimony.  *Magallanes*, 881 F.2d at 751.  When the evidence is subject to more

than one rational conclusion, we must defer to the ALJ's conclusion.  *Andrews v.*

*Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).  Here, the ALJ appropriately

considered Plaintiff's limited work history and the findings are supported by

---

[3] Plaintiff suggests the ALJ improperly considered his criminal history as part of a

character or truthfulness assessment.  ECF No. 12 at 17-18.  However, the ALJ

considered his criminal history as a non-disability reason for his poor work history

and not for the purpose of overall character assessment.  Tr. 25.

ORDER - 16

substantial evidence.  This is a clear and convincing reasons for giving less weight to Plaintiff's symptom claims.

Fifth, the ALJ observed numerous inconsistencies in the record which undermine the reliability of Plaintiff's self-report.  Tr. 25.  In evaluating a claimant's symptom claims, an ALJ may consider the consistency of an individual's own statements made in connection with the disability-review process with any other existing statements or conduct under other circumstances.  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).  The ALJ cited inconsistencies involving Plaintiff's reported last use of alcohol (Tr. 296, 449); history of special education (Tr. 213, 296, 449); symptoms of suicidal thoughts, lack of energy, and nightmares (Tr. 296-97, 607); history of suicide attempts (Tr. 447, 612); and side effects and results from medication (Tr. 229, 248, 402-03, 408, 503, 606, 612, 651, 853-54, 873, 891-92, 911-12, 921-22).  The ALJ also noted that despite complaints of dizziness, confusion, and sleepiness, he frequently denied dizziness (citing *e.g.*, Tr. 428, 442, 539, 987, 1011, 1019, 1035, 1071, 1092, 1108) and presented with full alertness and orientation (citing *e.g.*, Tr. 335, 394, 406-07, 410, 492, 501-02, 504, 512, 543, 598, 610, 614, etc.).

Plaintiff contends these issues are "minor" and that none of these inconsistencies are significant in this case.  ECF No. 12 at 18.  Although some of these inconsistencies may be less compelling than others, inconsistencies regarding Plaintiff's complaints of symptoms and side effects from medication are particularly relevant to the weight given to his testimony.  The evidence reasonably supports the

ORDER - 17

ALJ's finding, and this is a clear and convincing reason supported by substantial evidence.

**B.    Opinion Evidence**

Plaintiff contends the ALJ improperly considered the opinions of state agency reviewers Michael Brown, Ph.D., and Gary Nelson, Ph.D., and the opinion of Tasmyn Bowes, Psy.D.  ECF No. 12 at 4-11.

For claims filed on or after March 27, 2017, new regulations changed the framework for evaluation of medical opinion evidence.  *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 416.920c.  The regulations provide that the ALJ will no longer "give any specific evidentiary weight…to any medical opinion(s)…" *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. § 416.920c(a).  Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources.  20 C.F.R. § 416.920c(a) and (b).  The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has

familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements"). 20 C.F.R. § 416.920c(c)(1)-(5).

Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered. 20 C.F.R. § 416.920c(b)(2). With regard to supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1)-(2). With regard to consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1)-(2).

The ALJ may, but is not required, to explain how other factors were considered. 20 C.F.R. § 416.920c(b)(2). However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. § 416.920c(b)(3).

1. *Michael Brown, Ph.D. and Gary Nelson, Ph.D.*

State agency reviewing psychologists Michael Brown, Ph.D., and Gary Nelson, Ph.D., opined in October 2018 and January 2019, respectively, that

ORDER - 19

Plaintiff is moderately limited in a number of mental functional areas. Tr. 62-64, 78-80. The ALJ found their opinions to be partially persuasive.

First, the ALJ found their opinions that Plaintiff is limited to lower stress work in more routine environments to be persuasive due to the risk of possible decompensation under more stress. Tr. 26, 64, 80. Second, although Drs. Brown and Nelson indicated Plaintiff is capable of well-learned moderately complex tasks, the ALJ found Plaintiff is more limited and included a limitation to simple, routine work-related instructions, tasks, and decisions in the RFC based on other evidence in the record. Tr. 26, 63, 79.

Third, socially, Dr. Brown and Dr. Nelson found Plaintiff is limited to working independently of the general public and is able to have brief, more superficial contact with coworkers and supervisors. Tr. 63, 79. The ALJ found these limitations are unpersuasive because they are not consistent with the record as a whole which reflects Plaintiff participated in group therapy by sharing his experiences, offering feedback, and interacting appropriately (citing *e.g.* Tr. 747, 752-53, 755, 760, 764, 788, 816); he frequently exhibited cooperative, pleasant behavior and normal mood and affect at appointments (citing *e.g.*, Tr. 299, 326, 332, 334, 336, 398, 402, 406-07, 429, 440, 443, 498, 501-02; 503-04, etc.); and he uses public transportation, shops in stores, and lives in transitional housing with other men without report of conflict (citing *e.g.*, Tr. 747, 752-53, 755, 760, 764, 788, 816). Tr. 27. Thus, the ALJ found Plaintiff is limited to incidental contact with the public and coworkers. Tr. 27.

Plaintiff argues the ALJ overlooked a significant limitation assessed by Dr. Brown and Dr. Nelson, who both indicated Plaintiff is, "[a]ble to work independently of others with occasional lapses in attention and concentration as well as attendance at work, but not at a cumulative level preventing productive work activity." ECF No. 12 at 7 (quoting Tr. 63, 79). Plaintiff contends "occasional lapses in attention" means he would be unable to sustain work in the competitive workplace due to excessive off-task behavior and absenteeism, even if he was able to perform "some productive work activity."[4] ECF No. 12 at 19. However, neither Dr. Nelson nor Dr. Brown indicated Plaintiff would only be able to perform "some productive work activity." Rather, they indicated that occasional lapse in attention, concentration, or absenteeism would not occur at a cumulative level preventing productive work activity. The plain language indicates the ALJ's interpretation of the opinions is supported by the record.

---

[4] Plaintiff argues the term "occasional" is defined the by Programs Operations Manual System (POMS) as "the activity or condition occurs at least once up to one-third of an 8-hour workday." DI 25001.001.A.53; ECF No. 12 at 19. Even if Drs. Brown and Nelson were aware of the POMS definition of "occasional" (which is not apparent to the Court), the qualification that off-task behavior would not exist at a level preventing productive work activity indicates that a lesser limitation was intended.

ORDER - 21

Plaintiff further argues the ALJ's RFC finding that Plaintiff is likely to be off-task and not productive up to ten percent of the workday is unsupported. Tr. 22, 27; ECF No. 12 at 8. The ALJ acknowledged that no opinion includes that limitation, but it was included in the RFC as "a precautionary measure in light of complaints of difficulty with concentration and the mechanics of treatment." Tr. 27. It is the ALJ's responsibility, not the physician's, to determine residual functional capacity. *Vertigan v. Halter,* 260 F.3d 1044, 1049 (9th Cir. 2001). The ALJ clarified the limitation was added to ensure that the vocational expert would not include jobs requiring "continuous and constant concentration throughout the entire workday/workweek." Tr. 27. This is reasonably consistent with the findings of Drs. Brown and Nelson who indicated some lapses and concentration may occur, but not to the point of unproductivity. The ALJ also indicated the limitation was included because some weight was given to Plaintiff's complaints about difficulties of concentration and the mechanics of treatment. Tr. 27. The limitation was therefore reasonable and based on substantial evidence.

2.    *Tasmyn Bowes, Psy.D.*

Dr. Bowes completed a DSHS Psychological/Psychiatric Evaluation form in July 2018 and listed diagnoses of PTSD, persistent depressive disorder, antisocial personality disorder, methamphetamine use disorder (no use in 1 year), and alcohol use disorder in sustained full remission (13 years reported). Tr. 295-305. She assessed marked limitations in six basic work activities and assessed the severity of

the combined impact of all mental impairments as marked.  Tr. 298.  The ALJ

found Dr. Bowes' opinion unpersuasive.  Tr. 27.

First, the ALJ discussed factors indicating the opinion is not adequately

supported.  As noted *supra*, a medical opinion is more persuasive when the source

provides relevant objective medical evidence and supporting explanations.  20

C.F.R. § 416.920c(c)(1).  The ALJ found that Dr. Bowes' opinion is based on a

cursory examination with no meaningful testing.[5]  Tr. 27.  Plaintiff correctly points

out that Dr. Bowes conducted a Rey test, Beck Depression Inventory, Beck

Anxiety Inventory, and a mental status examination.  Tr. 297, ECF No. 12 at 10.

While this does not suggest that extensive psychological testing occurred, it

indicates the exam was more than "cursory." Similarly, the ALJ's characterization

of this testing as lacking meaning is unclear without further explanation.

---

[5] The ALJ wrote, "Dr. Bowes's opinion is based on a cursory examination with no

meaning [sic] testing," ECF No. 12 at 9-10.  Plaintiff contends "it is not clear what

'meaning testing' is," ECF No. 12 at 10, and "'meaning testing' is a term with no

discernable meaning." ECF No. 14 at 12.  It seems reasonable to conclude the ALJ

intended to use the word "meaningful" rather than "meaning."  The court may

make inferences from the ALJ's discussion of the evidence.  *Magallanes*, 881 F.2d

at 755.

ORDER - 23

The ALJ also noted the opinion is on a checkbox form and provides no explanation for the ratings given. Tr. 27. Plaintiff cites case law prior to the new regulations indicating it is error to reject an opinion that is well-supported because of its format. ECF No. 12 at 10 (citing *Garrison*, 759 F.3d at 1013. However, the issue here is the lack of supporting explanation for the ratings assessed which bears directly on the supportability of the opinion. 20 C.F.R. § 416.920c(c)(1). The ALJ reasonably considered that there is no explanation of the ratings assessed by Dr. Bowes in weighing the opinion.

Second, the ALJ found the marked limitations assessed by Dr. Bowes are inconsistent with Plaintiff's essentially normal mental status exam result and with the longitudinal record. Tr. 27. A medical opinion is more persuasive when it is consistent with evidence from other medical and nonmedical sources. 20 C.F.R. § 416.920c(c)(1)-(2). As discussed *supra*, although Plaintiff presented as withdrawn with dysphoric mood and blunted affect, the other mental status exam findings indicated normal memory, normal concentration, normal fund of knowledge, normal abstract thought, and normal insight and judgment. Tr. 24, 299-300. The marked limitations assessed by Dr. Bowes were reasonably found to be inconsistent with the overall mental status exam results. Similarly, the ALJ's conclusion that the longitudinal record, Plaintiff's presentation at appointments and therapy sessions, and his statements about improvement with treatment are inconsistent with the marked limitations assessed. As discussed *supra*, the ALJ's findings regarding these issues are supported by substantial evidence.

ORDER - 24

Additionally, the ALJ found Plaintiff's activities such as using public transportation, shopping in stores, and living with others in transitional housing with reports of conflict, are inconsistent with the marked limitations assessed by Dr. Bowes.  Tr. 27 (citing Tr. 222-29, 241-48, 297); *see also* Tr. 20.  The ALJ's reasons for finding Dr. Bowes' opinion unpersuasive are legally sufficient.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly,

1. Plaintiff's Motion for Summary Judgment, ECF No. 12, is DENIED.

2. Defendant's Motion for Summary Judgment, ECF No. 14, is GRANTED.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order and provide copies to counsel.  Judgment shall be entered for Defendant and the file shall be **CLOSED**.

**DATED** March 10, 2022.

LONNY R. SUKO
Senior United States District Judge

ORDER - 25